UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20783-CIV-ALTONAGA/Goodman

**UNITED STATES OF AMERICA**,

 Plaintiff,
v.

**FRANCISCO HERNANDEZ**, *et al.*,

 Defendants.
_____/

### ORDER

**THIS CAUSE** came before the Court on Magistrate Judge Jonathan Goodman's Report and Recommendations [ECF No. 114], entered on August 10, 2023. In the Report, the Magistrate Judge makes findings of fact giving rise to his recommendations that the Court hold Defendant Hugo Gimenez in contempt for violating the terms of the October 31, 2018 Injunction [ECF No. 44] but not Defendant Francisco Hernandez. (*See generally* Report). Gimenez filed timely Objections [ECF No. 115] to the Report, to which the Government filed a Response in Opposition [ECF No. 116]. The Court then held a hearing on October 30, 2023. (*See* Oct. 30, 2023 Hr'g [ECF No. 119]).

The Court has carefully reviewed the Report, the parties' written submissions, the evidentiary hearing transcripts, the record, and applicable law. For the following reasons, the Report is affirmed and adopted, and Gimenez's Objections are overruled.

### I. BACKGROUND

On March 1, 2018, the Government filed a Complaint [ECF No. 1] alleging Defendants Hernandez and Gimenez, both tax preparers at Francisco Hernandez Tax Services, LLC, engaged

in fraudulent conduct when preparing customer tax returns. The parties thereafter submitted a stipulated injunction (*see generally* Joint Mot. for Entry of Inj. as to Specific Conduct Submitted by Stipulation & Consent & Req. for Hr'g [ECF No. 40]), which the Court entered on October 31, 2018 (*see generally* Inj.). In addition to requiring compliance with all laws and regulations applicable to tax preparers, the Injunction imposed additional due diligence and documentation obligations on Defendants, such as requiring them to collect Customer Information Organizers and Customer Information Modules (collectively "Customer Organizers") with customers' supporting documentation. (*See generally id.*). The Injunction also authorized the Government to request documents from Defendants to monitor their compliance with the Injunction. (*See id.* 11).[1]

The Injunction was set to expire on December 31, 2021, but after more irregularities surfaced in tax returns prepared by Defendants, the parties stipulated to modify the Injunction and extend it by an additional year. (*See generally* Joint Mot. to Modify Inj. as to Specific Conduct [ECF No. 49]). The Court modified the Injunction accordingly. (*See generally* Dec. 27, 2021 Order [ECF No. 50] (implementing modifications to the content and handling of Customer Organizers but otherwise retaining the terms of the original Injunction)).

By the end of 2022, the Government again detected violations of the Injunction which it characterized as "deliberate." (Mot. for Order to Show Cause [ECF No. 53] 2). The Government moved to hold Defendants in contempt, asserting they had

> engaged in conduct subject to penalty under 26 U.S.C. [section] 6694; fabricated customer deductions and credits; falsely claimed a dependent on the return of at least one customer; and failed to comply with the verification requirements of the Injunction and the internal revenue laws and regulations.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

(*Id.* 6 (alteration added)). Once the Motion was fully briefed, the Court referred the matter to the Magistrate Judge. (*See* Mar. 13, 2023 Order [ECF No. 76]).

The Magistrate Judge held an evidentiary hearing on May 25 and 26, 2023, where five of Defendants' customers, one employee from Defendants' place of work, and Hernandez testified. (*See generally* May 25, 2023 Tr. [ECF No. 102]; May 26, 2023 Tr. [ECF No. 101]). Gimenez invoked his Fifth Amendment right against self-incrimination and declined to answer the Government's questions. (*See* May 25, 2023 Tr. 47:4–72:7). At the hearing, the Magistrate Judge ordered briefing on the appropriateness of drawing an adverse inference against Gimenez for his invocation of his Fifth Amendment right not to testify (*see* May 26, 2023 Order [ECF No. 95]); he then issued an Order explaining he would apply such an inference against Gimenez, but that the inference alone was insufficient to justify a recommendation of contempt for either Defendant (*see* Order on Potential Adverse Inferences [ECF No. 110] 2).

The Magistrate Judge issued his Report and Recommendations on August 10, 2023. (*See generally* Report). As to Hernandez, the Magistrate Judge finds the allegations against him are unfounded and recommends the Court not hold him in contempt. (*See id.* 53–64). No party objected to this finding, and the Court does not further address it. As to Gimenez, the Magistrate Judge concludes Gimenez willfully violated the Injunction and recommends the Court hold him in contempt. (*See id.* 38–52). Gimenez timely objected. (*See generally* Objs.). The Court held a final hearing on October 30, 2023, where the parties presented their arguments regarding the Magistrate Judge's findings. (*See* Oct. 30, 2023 Hr'g).

## II. LEGAL STANDARDS

***Contempt***. "Civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained." *Bank*

*of Am., N.A. v. United Cities Grp., Inc.*, No. 08-21917-Civ, 2009 WL 855987, at *4 (S.D. Fla. Mar. 31, 2009) (citation omitted). "The party seeking contempt bears the initial burden of showing, by clear and convincing evidence, a willful disregard for the authority of the court through failure to comply with a court order." *Id.* (citing *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007); other citation omitted). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co.*, 484 F.3d at 1291 (emphasis and citation omitted). "[O]nce the moving party makes a *prima facie* showing that the court order was violated, the burden of production shifts to the alleged contemnor to show a present inability to comply that goes beyond a mere assertion of inability[.]" *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) (alteration added; citations and quotation marks omitted).

The Eleventh Circuit has held that "'[i]n determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard.'" *Ga. Power Co.*, 484 F.3d at 1291 (alteration added; quoting *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002)). Moreover, the court should "construe any ambiguities or uncertainties in such a court order in a light favorable to the person charged with contempt." *Id.* (citation omitted). The focus in a civil contempt proceeding "is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Howard Johnson*, 892 F.2d at 1516 (citation omitted).

Whether a litigant's actions constitute contempt is ultimately left to the discretion of the district court. *See id.* at 1522 (concluding "the district court's finding of contempt and

4

imposition of sanctions was within its discretion" (footnote call number omitted)); *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000) (citation omitted) (explaining that a court of appeals reviews the grant or denial of a motion for civil contempt under an abuse of discretion standard). Moreover, "[d]istrict courts are afforded wide discretion in fashioning an equitable remedy for civil contempt." *Id.* at 1385 n.5 (alteration added; citation omitted).

***Review of Magistrate Judge's Report***. Magistrate judges have limited power to address contempt. *See* 28 U.S.C. § 636(e). Where, as here, a motion for civil contempt has been referred to a magistrate judge, a certification process is used. *See, e.g.*, *Longhi v. AMG Fin. Grp., Inc.*, No. 19-23047-Civ, 2020 WL 9460327, at *2 (S.D. Fla. Dec. 1, 2020), *report and recommendation adopted*, 2021 WL 3855898 (S.D. Fla. Aug. 27, 2021). Specifically,

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served . . . an order . . . to show cause [before the district judge] why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of[.]

28 U.S.C. § 636(e)(6) (alterations added).

"'The certification of facts under section 636(e) serves to determine whether the moving party can adduce sufficient evidence to establish a *prima facie* case of contempt.'" *Lapinski v. St. Croix Condo. Ass'n, Inc.*, No. 16-cv-1418, 2018 WL 4381168, at *2 (M.D. Fla. Aug. 1, 2018) (quoting *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999)). Along with this certification, "a magistrate judge may recommend that certain sanctions be imposed by the district court upon a finding of contempt." *Id.* (citation and quotation marks omitted).

Therefore — as with other dispositive matters referred to a magistrate judge — a report and recommendation is issued, and the parties may file objections to the magistrate judge's findings. *See, e.g.*, *id.* at *1; *Sream, Inc. v. S&T Tobacco Int'l, Inc.*, No. 18-cv-1733, 2021 WL 8201486, at *1 (M.D. Fla. Jan. 11, 2021), *report and recommendation adopted sub nom.*, *Roor*

*Int'l BV v. S&T Tobacco Int'l, Inc.*, 2021 WL 8201489 (M.D. Fla. Jan. 27, 2021). District courts must review *de novo* "any part of [a] magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3) (alteration added). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). A district court reviews the parts of a magistrate judge's report and recommendation that were not properly objected to for clear error. *See Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) ("Most circuits agree that '[i]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" (alteration adopted; citation omitted)).

### III.  DISCUSSION

Gimenez objects to the Magistrate Judge's findings, arguing that the Magistrate Judge impermissibly modified the Injunction's duration, incorrectly characterized the Injunction's requirements, improperly weighed the credibility of witness testimony, and improperly applied an adverse inference against Gimenez for his invocation of his Fifth Amendment right not to testify. (*See generally* Objs.). The Court addresses each argument and concludes Gimenez violated the Injunction's provisions and a finding of contempt is warranted.

**A.  The Injunction is valid and lawful.**

As explained, the Court entered the parties' stipulated Injunction on October 31, 2018 and modified it, also by consent of the parties, on December 27, 2021. (*See generally* Inj.; Dec. 27, 2021 Order). Gimenez's sole argument regarding the validity of the Injunction is that despite the parties' intent to extend the Injunction through the end of 2022 (*see* Joint Mot. to Modify Inj.

as to Specific Conduct 1), the Court's modification did not explicitly state a new expiration date and therefore did not serve to extend the Injunction's duration (*see* Objs. 6). Gimenez contends that by concluding the Injunction indeed remained in effect through December 31, 2022, the Magistrate Judge impermissibly modified the Injunction. (*See id.*).

Gimenez is correct that the original Injunction was set to expire on December 31, 2021 and that the December 27, 2021 Order modifying the Injunction did not *explicitly* extend this deadline. (*See generally* Inj.; Dec. 27, 2021 Order). But the December 27, 2021 Order includes compliance dates in 2022, clearly contemplating an extension of the Injunction's provisions. (*See* Dec. 27, 2021 Order 1 (setting a January 9, 2022 deadline to finalize the substance and form of Customer Information Modules)). Further, the parties indisputably agreed to the extension and acted as if the Injunction were in place through December 31, 2022. (*See* Report 8).

As the Magistrate Judge notes, "[a]n injunction should be strictly construed, but it 'should not be pressed to a dryly logical extreme' giving rise to technical loopholes." (Report 7 (alteration added; quoting *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1206 (11th Cir. 2009))). The Court will not indulge the "narrow literalism" Gimenez proposes. *Alley*, 590 F.3d at 1206 (citation omitted). The parties and the Court have at all times intended the Injunction to remain in place through December 31, 2022 and proceeded as such. (*See* Report 3–8). Continuing to rely on this understanding does not amount to an impermissible "modification" of the Injunction with "retroactive effect." (Objs. 6 (citation omitted)).

**B.  The Injunction is clear and unambiguous.**

The Injunction imposed several requirements on Defendants beyond those typically expected of tax preparers. (*See generally* Inj.). These included, for example, conducting due diligence and collecting additional documentation when claiming Head of Household status or

7

preparing a Schedule C to claim tax deductions for certain expenses. (*See id.* 4–10). The Magistrate Judge summarizes the provisions of the Injunction relevant to this proceeding, which are numerous; the Court does not repeat them here. (*See* Report 9–12). While Gimenez challenges whether his conduct can be properly interpreted as a violation of the Injunction, he does not argue any relevant provision of the Injunction is unclear or ambiguous. (*See generally* Objs.). In any case, the Court finds that the Injunction's requirements are clear and unambiguous. (*See generally* Inj.).

### C. Gimenez had the ability to comply with the Injunction but did not do so.

The Magistrate Judge concluded based on "credible" witness testimony and documentary evidence that Gimenez failed to comply with the terms of the Injunction despite having the ability to do so. (Report 20). The Magistrate Judge's findings focused on tax returns Gimenez prepared for customers Yunier Cabrera, Ayleen Garcia, Ana Teresa Milanes-Baez, and Nathaly Hernandez. (*See id.* 21–25, 29–35).

First, the Magistrate Judge found that Gimenez violated the Injunction when preparing Cabrera's tax return. Gimenez

> inadequately considered Cabrera's minimal English language skills and lack of knowledge on tax laws[;] . . . asked questions to elicit responses that would support deductions without reviewing documents that might undermine the deduction and without asking for additional details[;] . . . [and] simply directed Cabrera to sign his return and its accompanying forms without any explanation.

(*Id.* 21–22 (alterations added; citation omitted)). Gimenez prepared a Schedule C for Cabrera that claimed multiple expenses that were in fact not deductible. (*See id.* 22–23). In doing so, Gimenez failed to verify "that the expenses were accurate and supported by receipts, bank statements, and other documents" (*id.* 22), as required by the Injunction (*see* Inj. 5–7). Gimenez also "claimed a credit for COVID[]relief on Cabrera's return, even though Cabrera credibly

testified that he told Gimenez that he did not contract COVID in 2021 and never missed work for any COVID-related reason." (Report 23 (citations omitted)).

Second, Gimenez improperly claimed Head of Household status on Garcia's tax return. While Garcia indicated on her Customer Organizer that she was unmarried, Gimenez did not confirm this information despite also preparing Garcia's husband's tax return, the husband being present at Garcia's appointment, and Gimenez reviewing property tax information and mortgage statements that listed Garcia's husband as an owner of the property. (*See id.* 24). Gimenez also claimed two non-cash charitable donations on Garcia's return that were unsupported by documentation (*see id.* 25), as required by the Injunction (*see* Inj. 8–9 (allowing Defendants to claim charitable deductions only where provided with "a verifiable (i.e. third party) receipt from a qualifying charity for each donation")).

Third, Gimenez reported multiple deductions on Milanes's tax return "without oral verification from Milanes or support from bank statements, receipts, and other documents[.]" (Report 30 (alteration added)). For example, Gimenez incorrectly claimed Milanes wore a uniform to work and claimed Milanes's personal telephone bill as a business expense even after she told Gimenez the bill included two additional lines for her children. (*See id.* 31). As with Cabrera, Gimenez also claimed a credit for COVID relief despite Milanes telling him she had not contracted the illness. (*See id.* 32).

Finally, Nathaly Hernandez "credibly testified that when she and her husband met with Gimenez, Gimenez tore the page listing her marital status off her packet (knowing they were married) and destroyed it in his document shredder." (*Id.* 34 (citation omitted)). Gimenez then "instructed her to complete a new one without her husband's information so that she could instead file as 'Head of Household.'" (*Id.* (citation omitted)).

In all four instances, Gimenez certified that the information provided to him in preparing these returns did not appear to be "incorrect, incomplete, or inconsistent." (*Id.* 25 (citation omitted); *see also id.* 23–24 32, 35 (citations omitted)). In fact, Gimenez either intentionally failed to ask critical questions that would have revealed inaccuracies and inconsistencies between the information provided by customers and the information reflected on the tax returns; or willfully fabricated deductions without documentation and based on unreasonable positions. (*See id.* 39–53).

Moreover, the Magistrate Judge reasoned that even if each of these customers signed their tax returns, "the weight accorded to the signatures is affected by their context." (*Id.* 39). Because many of the customers spoke little or no English and understood little about tax laws, their signatures must be understood to reflect the customers' "knowledge and belief that Gimenez prepared the return in accordance with the tax laws." (*Id.*). The Magistrate Judge thus concluded that the Government demonstrated Gimenez violated the Injunction by clear and convincing evidence. (*See id.* 39–53).

Gimenez challenges three aspects of this analysis: the Magistrate Judge's characterization of the Injunction's requirements; the weight ascribed to witness testimony; and the application of an adverse inference against Gimenez for asserting his Fifth Amendment right not to testify. (*See generally id.*). The Court addresses each objection in turn.

1. The Injunction's Requirements

Gimenez argues the Injunction required him to "merely collect[] customer-provided substantiation for expenses and income[,]" not verify or audit this information when completing the tax returns. (Objs. 4–5 (alterations added)). In addition, Gimenez stresses that the Injunction required him to seek confirmation that adequate documentation had been provided and then

"'rely on said confirmation from the taxpayer'" to complete the return. (*Id.* 5 (emphasis omitted; quoting Inj. 6)). According to Gimenez, his failure to review supporting documentation cannot form the basis of a willful violation of the Injunction. (*See id.* 5–6). The Court does not agree.

Even if a tax preparer "is not required to audit, examine or review books and records, business operations, documents, or other evidence[,]" he "may not ignore the implications of information furnished to [him] or actually known by [him]" and "must make reasonable inquiries if the information as furnished appears to be incorrect or incomplete." 26 C.F.R. § 1.6694-1(e) (alterations added); (*see* Inj. 2–3 (requiring that Defendants comply with the provisions of 26 C.F.R. section 1.6694-1); *see also* Resp. in Opp'n 4–5). Further, the Injunction required Gimenez to collect such documentation and enjoined him from including any income or expense on a taxpayer's Schedule C if such documentation was not provided. (*See* Inj. 5–6).

The Magistrate Judge found Gimenez fabricated deductions despite a lack of documentation and evidence that the deductions were inappropriate. (*See, e.g.*, Report 42–44). This is clearly a violation of the Injunction and applicable tax laws and regulations. *See* 26 C.F.R. § 1.6694-1(e); (*see, e.g.*, Inj. 3 (enjoining Defendants from "[p]reparing Forms 1040 that claim false credits, expenses, deductions, and income" (alteration added))). The Magistrate Judge also found that Gimenez intentionally failed to ask questions in order to "absolve[] him[self] of liability for reporting a fraudulent item on the customer's tax return." (Report 40 (alterations added)). By not asking Garcia whether she was married or whether Milanes's telephone bill was for personal use, for example, Gimenez failed to "make reasonable inquiries" regarding information before him. 26 C.F.R. § 1.6694-1(e). This, too, amounts to a clear violation of the Injunction's provisions.

CASE NO. 18-20783-CIV-ALTONAGA/Goodman

### 2. Witness Testimony

Gimenez next argues the Magistrate Judge "ascribe[d] inappropriate weight to witness testimony impeached by inconsistent sworn statements." (Objs. 3 (alteration added)). According to Gimenez, the four taxpayers' signatures and accompanying verifications that their tax returns were accurate render their testimony attributing inaccuracies to Gimenez incredible. (*See id.* 3–4). Gimenez asks the Court to revisit the Magistrate Judge's credibility determinations *de novo*. (*See id.* 4).

"When objections are made to findings which the magistrate judge made based upon the testimony of witnesses," the district court must "review the transcript or listen to the tape-recording of those proceedings." *Willis v. United States*, 346 F. App'x 404, 406 (11th Cir. 2009) (alteration added; quotation marks and citation omitted). But the Court is not required to discard a magistrate judge's credibility findings. To the contrary, "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (alteration added; citation omitted). Therefore, in evaluating a factual version of events, a court "should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'" *Id.* (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)).

Here, the Magistrate Judge issued a thorough and well-reasoned analysis of both the witness testimony and Gimenez's arguments regarding the import of sworn signatures, ultimately concluding that the witnesses were credible and that less weight should be afforded to the signatures given the context in which they were given. (*See* Report 39–53). The record and evidentiary transcripts are consistent with these conclusions, and the Court will not disturb the

Magistrate Judge's credibility determinations. (*See generally* May 25, 2023 Tr.; May 26, 2023 Tr.). Moreover, the Court held a hearing following issuance of the Report in accordance with 28 U.S.C. section 636(e)(6)(B), at which Gimenez presented no persuasive evidence to reweigh the Magistrate Judge's credibility findings. (*See generally* Oct. 30, 2023 Hr'g). The Court therefore adopts the Magistrate Judge's determination that the witnesses credibly testified to providing Gimenez with information that was inconsistent with or contrary to what Gimenez included on their tax returns.

    3. Adverse Inference

According to Gimenez, a "key driver" of the Magistrate Judge's findings was his "discretionary decision to take an adverse inference against Gimenez for invoking his Fifth Amendment right to decline to testify[.]" (Objs. 1 (alteration added)). Gimenez explains he was pushed to invoke his Fifth Amendment right because the Government foreshadowed criminal charges against him on a theory the Magistrate Judge ultimately found to be unsupported. (*See id.* 2–3; Report 8–9 (finding no evidence was presented that Defendants hid information from customers)). Because the Government could have dropped these criminal insinuations or offered immunity to Gimenez but did not do so — and because the allegations were ultimately unfounded — Gimenez argues an adverse inference did not properly balance the "'competing interests of the party asserting the privilege, and the party against whom the privilege is invoked[.]'" (Objs. 2 (alteration added; quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000))).

Contrary to Gimenez's assertions, the adverse inference was not a "key driver" of the Magistrate Judge's analysis. Rather, the Magistrate Judge mentioned the inference once in the 65-page Report, and applied it only "to the extent there might be a question about the impact of

13

the signatures of Gimenez's clients[.]" (Report 41 (alteration added)). As explained, the Court accepts the Magistrate Judge's credibility findings and finds that the facts certified sufficiently support a finding of civil contempt even without the adverse inference.

\* \* \*

The facts and records before the Court, as well as the testimony and arguments presented during the three hearings, indicate Gimenez violated the Injunction. Thus, the burden is on Gimenez to show an inability to comply. Because Gimenez nowhere argues he was unable to comply with the Injunction's provisions (*see generally* Report; Objs.), he fails to satisfy this burden, and a finding of civil contempt against him is warranted.

The question remains as to what sanction should be imposed. Civil contempt sanctions "may serve to either (1) coerce the contemnor to comply with a court order, or (2) compensate a party for losses suffered as a result of the contemnor's act." *McGregor*, 206 F.3d at 1385 n.5; *see also Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (explaining that a civil contempt sanction should be "remedial, and for the benefit of the complainant" (quotation marks and citation omitted)). The Government requests that Gimenez be enjoined from working as a tax preparer for anyone other than himself and be disbarred from practicing before the IRS in any capacity. (*See* Mot. for Order to Show Cause 15). Gimenez requests that any sanction revoking his preparer tax identification number and barring him from preparing returns "be without prejudice to Gimenez's ability to move for modification of the injunction after an appropriate time." (Objs. 7). During the October 30, 2023 hearing, counsel for Gimenez indicated a year would be an appropriate amount of time within which to seek modification.

CASE NO. 18-20783-CIV-ALTONAGA/Goodman

The Court determines that an injunction on Gimenez's ability to prepare tax returns for anyone other than himself with the opportunity to seek modification within one year is an appropriate civil sanction.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation **[ECF No. 114]** is **AFFIRMED AND ADOPTED**.

2. Defendant's Objections to the Report **[ECF No. 115]** are **OVERRULED**.

3. The Court finds Defendant Hugo Gimenez in contempt for violating the terms of the October 31, 2018 Injunction [ECF No. 44]. Gimenez is **ENJOINED** from acting as an income tax preparer for anyone other than himself. Gimenez may seek modification of this injunction within one year of its effective date.

**DONE AND ORDERED** in Miami, Florida, this 5th day of January, 2024.

_____
CECILIA M. ALTONAGA
CHIEF UNITED STATES DISTRICT JUDGE

cc: counsel of record